UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MONTU LIGHTEN,
AMANDA GOSS,

Defendants.

**Hon. Hugh B. Scott**

08CR214A

**Report
&
Recommendation**

This matter is referred to the undersigned to hear and determine pretrial matters pursuant to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C. § 636(b)(1)(A) (Docket No. 15). The instant matters before the Court in this Report are portions from the defense omnibus motions from (a) Montu Lighten (Docket No. 21[1]) seeking suppression and an evidentiary hearing and (b) Amanda Goss (Docket No. 52[2]) seeking suppression of physical evidence and statements obtained during the execution of a search warrant, and reserving the right to move to controvert eavesdrop orders and suppress physical evidence

---

[1]In support of his motion, Lighten also filed his post-hearing Memorandum, Docket No. 58. In response to this motion, the Government filed its Response, Docket No. 22, and its post-hearing Memorandum, Docket No. 59.

[2]In response to this motion, the Government filed its Response, Docket No. 54.
Goss' motion was filed after change of counsel, see text minute entry Nov. 25, 2008, and several motions seeking extension of time to file, Docket Nos. 31, 32, 36, and an earlier attempt to file this motion, Docket No. 51.

obtained therefrom. Goss also joins in codefendant's motion (id. at 43). The various discovery relief also sought in these motions (as well as Government's motion for reciprocal discovery from both defendants (Docket No. 22, Gov't Response to Lighten at 13-14; Docket No. 54, Gov't Response to Goss at 18-19)) shall be addressed in a separate Order.

An evidentiary hearing was held on October 30 (Docket No. 53 (transcript)), and November 9, 2009 (Docket No. 50 (transcript)), for Lighten's suppression motion, with post-hearing submissions due by January 14, 2010, oral argument was scheduled for January 14, 2010 (Docket No. 48), then for January 26, 2010 (text notice, Jan. 7, 2010). The Government then moved for extension of time to file its post-hearing submissions, to February 4, 2010 (Docket No. 55), which was granted (text entry Jan. 26, 2010). As for Goss, the latest briefing schedule had her motion due by December 22, 2009; the Government's response by January 8, 2010; and oral argument on January 26, 2010 (Docket No. 47; text entry of minutes, Oct. 30, 2009; text notice, Jan. 7, 2010). Goss and the Government submitted the motions on the papers. All motions were deemed submitted, and the Court reserved decision, on January 26, 2010.

## BACKGROUND

Defendants were charged with conspiracy to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C), and possession of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 844(a), on April 8, 2008 (Docket No. 14, Indict., Count I). They were also charged with unlawful possession with intent to distribute of 5 grams or more of that substance (or a mixture and substance containing cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), possession of that substance, in violation of 21 U.S.C. § 844(a) and 18 U.S.C. § 2 (id., Counts II, IV, III).

On April 8, 2008, special agent Joseph Bongiovanni of the United States Drug Enforcement Administration ("DEA") conducted a drug trafficking investigation with the Tonawanda Police Department, meeting with a confidential informant who advised that he could purchase a "Big-8" of cocaine from an individual named "Montu" (see Docket No. 59, Gov't Memo. at 1; Docket No. 53, Oct. 30, 2009, Tr. at 13 (hereafter "Oct. Tr.")). Bongiovanni instructed the informant to make a recorded telephone conversation with this individual (Docket No. 59, Gov't Memo. at 1-2; Docket No. 53, Oct. Tr. at 13-15). This recording was played during Lighten's suppression hearing. Bongiovanni stated that the informant and the individual identified as "Montu" spoke in code about the informant purchasing 4½ ounces of cocaine for $4,500 at the Royal Restaurant (Docket No. 53, Oct. Tr. at 17-18; Docket No. 59, Gov't Memo. at 2). The DEA and the Tonawanda Police then set up a surveillance of defendant, observing defendant travel to destinations he told the informant he would go to before making the alleged transaction and then heading to the contact point, the Royal Restaurant (Docket No. 59, Gov't Memo. at 2-3). The DEA agents believed they saw Lighten obtain drugs from a third party and was on his way to meeting the informant, but they also saw defendant driving with defendant Goss and a child. As Lighten parked the car at the restaurant, DEA agents proceeded to arrest him and as the officers approached the vehicle, Goss dropped a package from her shirt onto the ground. (Id. at 4.) At the DEA office immediately following the arrest, Lighten proceeded to tell agent Chris Wisniewski about other drug dealers in the area and how Lighten could obtain drugs from some of them (id. at 5). Lighten was then placed in the Erie County Holding Center overnight.

The DEA agents brought Lighten to the DEA office the next day prior to his arraignment when he demanded (by banging on his door, see Docket No. 50, Nov. 9, 2009, Tr. at 13-14 (hereinafter "Nov. Tr.")) to speak to the agents. Lighten was not re-advised of his Miranda rights but the agents had not intended to question Lighten that day. When brought out of his cell, Lighten admitted that he acquired the drugs to give them to someone else and proceeded to incriminate Goss as well (Docket No. 50, Nov. Tr. at 16; Docket No. 50, Gov't Memo. at 6).

Defendants were arraigned on criminal complaints on April 10, 2008 (Docket No. 2; cf. Docket No. 58, Lighten Post-Hearing Memo. at 9).

*Montu Lighten's Motion*

Lighten argues that his arrest on April 8, 2008, was without probable cause and thus his subsequent statements should be suppressed as fruit of the poisonous tree (Docket No. 21, Lighten Atty. Affirm. at 3). He also seeks suppression of statements he made the next day, arguing that he was not advised again of his Miranda rights after being (as he termed it) illegally detained for 24 hours (id.).

A suppression hearing was held on Lighten's motion on October 30, 2009, and continued to November 9, 2009 (Docket Nos. 53, 50). Lighten now argues that the only basis for his arrest was a recorded informant's telephone call to him made at the direction of the DEA, wherein the informant sought (in code) to purchase drugs from defendant (Docket No. 58, Lighten Memo. at second unnumbered page; Docket No. 53, Oct. Tr. at 13-14). Lighten concludes that the arrest was not supported by probable cause, that the sole support for the arrest was "painfully thin" code references to potential drug transaction without furnishing any foundation for the so-called code (Docket No. 58, Lighten Memo. at third unnumbered page; Docket No. 53, Oct. Tr. at 17).

4

Lighten questions the credibility of the confidential informant and the fact that this one conversation between that informant and Lighten was the only one recorded (Docket No. 58, Lighten Memo. at third to fourth unnumbered pages).

As for Lighten's arrest and pre-arraignment statements, Lighten was in custody for at least twelve hours prior to being advised of his rights, then he was in custody for another six hours before making the further statements about acquiring drugs. He argues that the two-day delay between his arrest and his arraignment violated his rights (id. at sixth to eighth unnumbered pages).

The Government retorts that probable cause existed to arrest Lighten from the confidential informant's calls (both the recorded call and subsequent conversations between the informant and Lighten) and subsequent surveillance of Lighten (Docket No. 59, Gov't Memo. at 7-8). Alternatively, the Government argues that agents had reasonable suspicion to stop Lighten and conduct an investigative Terry[3] stop (id. at 8-9). Once defendants were stopped and Goss dropped the cocaine, probable cause was established for arresting defendants (id. at 9).

On the Miranda issue, the Government argues that Lighten was advised of his rights prior to making his voluntary statement (id. at 9-10). The Government further states that any pre-arraignment delay here must be seen as reasonable under the circumstances, since Lighten was arrested in the afternoon, the DEA lacked overnight facilities (hence placing Lighten in the Erie County Holding Center overnight), and Lighten made his statements the next day voluntarily and not during DEA questioning (id. at 13-16).

---

[3]See Terry v. Ohio, 392 U.S. 1 (1968).

*Amanda Goss's Motion*

Goss seeks to suppress evidence obtained pursuant to a search warrant executed at 19½ Park Street, Tonawanda, New York, on April 8, 2008, as well as production of the warrant, and the warrant application (Docket No. 52, Goss Motion at 4). She claims that the warrant was obtained after she invoked her right to counsel and was coerced or made to sign the search warrant agreement (id.). She also seeks to suppress the crack cocaine found underneath her shirt because male police officers ordered Goss to lift her blouse. She contends that she was ordered to lift her blouse and the officers searched her bra and found the crack cocaine; the Drug Enforcement Administration and Tonawanda police claim that the crack cocaine fell from defendant's clothing as she exited her car. (See id. at 5.) Any pat down search of Goss should have been limited to her outer clothes and not get to her blouse or undergarments (see id.).

The Government contends that, as Goss exited her vehicle, the agents observed in plain view a plastic bag containing a white powdery substance fall to the ground from under her shirt (Docket No. 54, Gov't Response to Goss at 3). After her arrest, a search warrant was obtained to search the Park Street residence (id. at 6).

Goss next contends that at least one intercepted telephone call involved her (answering the call and giving the telephone to Lighten), and she reserves the right to move to controvert the eavesdrop order and to suppress evidence since she had not received the eavesdrop application or orders. She also seeks a Franks hearing in connection with the eavesdrop order. (Docket No. 52, Goss Motion at 42-43.) The Government does not address this motion.

**DISCUSSION**

These motions seek suppression of evidence seized during Lighten's arrest, Lighten's statements from his arrest and prior to his arraignment, and evidence obtained from the search of the Goss's (and Lighten's) home and from Goss's stop. Goss also seeks exclusion of non-testifying co-conspirator's statements (presumably those of Lighten).

I.     Lighten's Arrest and Suppression of Evidence Therefrom

The issue here is whether there was probable cause to arrest Lighten based upon the coded telephone conversation between him and a confidential informant, which lead to surveillance of Lighten and to his eventual arrest. The totality of circumstances here establishes probable cause. The evidence shows that probable cause arose not merely because of the coded telephone call, but also subsequent surveillance of Lighten and further phone calls confirming a meeting by the confidential informant and Lighten for the informant to purchase drugs from Lighten. At a minimum, these circumstances create reasonable suspicion sufficient to conduct a Terry stop of Lighten when he arrived at the rendevous. Lighten's suppression motion of the physical evidence, therefore, should be **denied**.

II.    Lighten's Post-Arrest Statements

Lighten was advised of his Miranda rights upon his arrest but was not re-advised of his rights the next day when he asked to speak with DEA agents prior to his arraignment. With the delay in producing Lighten for his arraignment, he argues that his later statement should be suppressed pursuant to the holding of Corley v. United States, ___ U.S. ___, 129 S.Ct. 1558 (2009) (Docket No. 58, Lighten Post-Hearing Memo. at ninth unnumbered page).

The Court in Corley considered the rule that unreasonable delay in presentment of a suspect renders that suspect's confession inadmissible and congressional attempts to modify that rule by enacting 18 U.S.C. § 3501, holding that the statute merely

> "modified McNabb-Mallory without supplanting it. Under the rule as revised by § 3501(c), a district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was 'reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]'). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was 'made voluntarily and . . . the weight to be given [it] is left to the jury.' Ibid. If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb-Mallory cases, and if it was, the confession is to be suppressed."

Corley, supra, 129 S.Ct. at 1571.

Under § 3501(c), "a district court has the discretion to suppress a confession if the delay between arrest and presentment is greater than six hours and is found by the court to be unreasonable under the circumstances," United States v. Fullwood, 86 F.3d 27, 31 (2d Cir. 1996).

It is clear here that Lighten waived his rights when he called the DEA agents to talk with them the day after his arrest. The issue is whether the delay between his arrest and arraignment was "unreasonable or unnecessary" as to make Lighten's statements subject to suppression. Section 3501(c) provides that six hours of detention without presentment before a Magistrate Judge makes a defendant's statement subject to suppression unless the delay is reasonable under the circumstances, 18 U.S.C. § 3501(c) (Docket No. 59, Gov't Post-Hearing Memo. at 14). The Government also argues that the statements, although taken beyond the six-hour detention period, are admissible if given voluntarily and without an interrogation (id. at 14-16), see United

8

States v. Colon, 835 F.2d 27, 30 (2d Cir.), cert. denied, 485 U.S. 980 (1987); 18 U.S.C. § 3501(c). As for the delay, the Government explains that Lighten was arrested in the afternoon of April 8, 2008, was interrogated and processed in the evening, and required overnight lodging (id. at 15). The DEA agents did not intend to question Lighten further but on April 9, 2008, he demanded to speak with the agents (id. at 15-16, 6).

Lighten here initiated the second day conversation and was not subject to DEA interrogation. Hence § 3501(d) applies and there is no bar to his voluntary statements despite the duration of the arraignment delay. Even if that delay was unreasonable, the fact he voluntarily made these statements makes the statements not subject to suppression under § 3501(c), see Fullwood, supra, 86 F.3d at 31; Colon, supra, 835 F.2d at 30 (id. at 16). As in Fullwood, supra, 86 F.3d at 31-32, where the appellant Poindexter initiated the contact with law enforcement agents and sought to speak with them, Lighten here initiated the contact with agent Wisniewski and, like Poindexter in Fullwood, Lighten's statements were not solicited "from an unwilling participant," id. at 32, hence not interrogation. Lighten's April 9, 2008, statement **should be not suppressed** and his motion for the relief should be **denied**.

III. Search Warrant for 19½ Park and Suppression of Evidence Therefrom

The Government replies that defendant Goss fails to allege how her constitutional rights were violated (Docket No. 54, Gov't Response to Goss at 5). After defendants' arrest, a search warrant of their home at 19½ Park Street was executed. The Government contends that Goss has not alleged her standing to object to this search, since testimony in the suppression hearing of her brother, David Goss, called into question her residence. (Id. at 6-7.) Alternatively, the

9

Government relies upon the fact that the warrant was obtained from a neutral and detached magistrate after finding probable cause (id. at 7).

On the standing issue, the Government's initial statement was that Goss was a resident at 19½ Park (cf. id. at 1), but later argues that she did not articulate her standing to contest the warrant. Although defendant did not articulate her basis for standing, by the Government conceding that she resided in the house, standing is no longer an issue. This is further supported by Goss's contention that she executed an agreement to search those premises (arguing that it was coerced and without advice of counsel after her arrest and advise of her right to counsel) (cf. Docket No. 52, Goss Motion at 4).

As for the probable cause for the search warrant, the Government (in response to the discovery motions) states that it has furnished to defense counsel for review various documents including "applications" (Docket No. 54, Gov't Response to Goss at 12). Presumably, Goss's counsel has reviewed the search warrant application (cf. Docket No. 52, Goss Motion at 4), otherwise counsel would have noted that she had yet to see the application at oral argument. The findings of the warrant issuing judge are to be given substantial deference, United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983) (Docket No. 14, Gov't Response at 4). Goss has not shown the absence of probable cause for issuance of the warrant. She was arrested for allegedly possessing cocaine after police officers and DEA agents observed Goss (and Lighten) depart from 19½ Park Street. Probable caused existed for issuance of the search warrant and Goss's motion to suppress the evidence seized pursuant to that warrant should be **denied**.

IV.     Search of Goss's Person

The Government contends that probable cause existed when the police officers observed, in plain view, the plastic bag drop from under Goss's shirt as she exited her vehicle, arguing that Goss voluntarily abandoned the object (Docket No. 54, Gov't Response at 5-6), Abel v. United States, 362 U.S. 217 (1960); California v. Hodari D., 449 U.S. 621 (1991). After her arrest, Goss was searched incident thereto and additional amounts of cocaine were found; the Government concludes that this search was lawful as incident to a lawful arrest, see United States v. Robinson, 414 U.S. 218 (1973) (id. at 6).

Regarding the plastic bag that the Government contends Goss dropped, there is a disputed issue of fact as to whether the bag dropped or whether the officers had Goss reveal it under her shirt. Therefore, an evidentiary hearing **will be ordered** (and scheduled in a separate Order) on this issue.

Regarding Goss's post-arrest search and discovery of cocaine, Goss cites Carthage v. Sumpter Twp., No. 06-10265, 2007 U.S. Dist. LEXIS 19452 (E.D. Mich. Mar. 20, 2007), for the proposition that the search of a female suspect must differ from that of a male suspect, being less intrusive, that the officer could only conduct a cursory inspection until an officer of the same sex as the suspect arrives to conduct a more through search (Docket No. 52, Goss Motion at 4). First, Goss incorrectly cited this case[4]. Second, Carthage did not involve a search of a female suspect's person; rather, the issue (in plaintiff's civil rights action there) was whether probable cause was established to issue a search warrant for a female robbery suspect's premises.

---

[4]The case at the citation indicated is State Farm & Cas. Co. v. Nuture, No. 05CV6412, 2008 U.S. Dist. LEXIS 7699 (W.D.N.Y. Feb. 1, 2008) (Telesca, J.), a property damage action.

11

Another court has noted that a pat down search incident to a lawful arrest conducted by an officer of the opposite sex of the arrestee "does not, absent some additional evidence of improper conduct during the search, convert a lawful search incident to arrest into an unlawful one," Stokes v. City of N.Y., No. 05-CV-0007, 2007 U.S. Dist. LEXIS 32787, at *44 n.9 (E.D.N.Y. May 3, 2007) (citing cases).

As a search incident to an arrest, suppression of this evidence would not be required. But the lawfulness of the arrest here hinges upon its underlying probable cause, whether Goss dropped the other plastic bag or whether officers had Goss lift her shirt and revealed the bag on her person. Suppression of the subsequently found cocaine will be addressed after the evidentiary hearing on the claimed dropped bag. Thus, a recommendation on this portion of Goss's motion **is deferred** until after an evidentiary hearing is held.

V.      Goss's Request for a Franks Hearing

The Government did not address Goss's motion to controvert the eavesdrop orders (cf. Docket No. 52, Goss Motion at 42). At the evidentiary hearing discussed above, the Court will inquire of the Government's position on whether a Franks hearing is also in order.

VI.     Goss's Motion to Exclude Statements by Non-Testifying Co-Conspirators

Goss seeks exclusion of statements by non-testifying co-conspirators (Docket No. 52, Goss Motion at 6-7). Here, co-defendant Lighten made post-arrest statements implicating Goss. The Government believes that no Bruton[5] problem exists, that statements can be attributed to each defendant individually or dealt with by redaction as to Goss (Docket No. 54, Gov't Response to Goss at 7).

---

[5]Bruton v. United States, 391 U.S. 123 (1968).

12

What Goss seeks is a ruling akin to an admissibility determination of co-conspirator's statements. Goss is not entitled to a pretrial hearing to determine the admissibility of co-conspirator statements under United States v. James, 590 F.2d. 575 (5th Cir. 1979) (en banc). James hearings are not required in the Second Circuit. Instead, in this circuit the judge presiding over the trial of the case makes a ruling pursuant to United States v. Geaney, 417 F.2d 1116, 1119-20 (2d Cir. 1969), cert. denied, 397 U.S. 1028 (1970), during the trial regarding the admissibility of the statements. See also United States v. Feola, 651 F. Supp. 1068, 1129-30 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989); see also United States v. Mastropieri, 685 F.2d 776 (2d Cir.), cert. denied, 459 U.S. 945 (1982). This Confrontation Clause issue is better addressed by the District Judge trying the case since he would know whether Lighten intended to testify or not to raise this as an issue for Goss. Thus, the decision of this motion **is deferred to the trial judge**.

## CONCLUSION

Based upon the above, it is recommended that so much of defendant Montu Lighten's omnibus motion (Docket No. 21) to suppress evidence be **denied**; to suppress his statements be **denied**; that so much of defendant Amanda Goss's omnibus motion (Docket No. 52) to suppress physical evidence and statements obtained during the execution of a search warrant be **denied**; and to suppress evidence from the police stopping Goss be **deferred until an evidentiary hearing is conducted**. A separate Order will be entered to schedule the evidentiary hearing for Goss.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
March 1, 2010