UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

08CR214A

**Report
&
Recommendation**

MONTU LIGHTEN,
AMANDA GOSS,
                                        Defendants.

This matter is referred to the undersigned to hear and determine pretrial matters pursuant

to 28 U.S.C. § 636(b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed

findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A) (Docket No. 15).  The instant matters before the Court are defendant Montu

Lighten's motion to dismiss the Indictment (Docket No. 114[1]) and defendant Amanda Goss'

motion to join in that dismissal motion (Docket No. 116).  The Government responded (Docket

No. 117) and the motions were argued on February 10, 2012.  At the conclusion of the argument,

the Government sought leave to submit copies of portions of the transcripts not included in

Lighten's motion and a copy of portions of the lab report and the Government was given until

---

[1]In support of the motion, Lighten also submits his attorney's Affirmation with exhibits,
Docket No. 114, and his Memorandum of Law, Docket No. 115.  The exhibits include excerpts
from the Grand Jury transcript, Docket No. 114, Ex. A, the suppression hearing of October 30,
2009, id.; see also Docket No. 53, full transcript, the suppression hearing of May 24, 2011,
Docket No. 114, Ex. B; see Docket No. 96, full transcript, and the lab reports, Docket No. 114,
Ex. C.

February 17, 2012, to so submit and the motions were deemed submitted as of February 17, 2012

(Docket No. 118).  The Government did not file this submission.  Familiarity with prior Reports

and Recommendations (Docket Nos. 60, 85, 104) and Orders (Docket Nos. 78, 93, 112) in this

action is presumed.

## BACKGROUND

Defendants are charged with conspiracy to distribute 5 grams or more of cocaine base, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C), and possession of 5 grams or more of

cocaine base, in violation of 21 U.S.C. § 844(a), on April 8, 2008 (Docket No. 14, Indict.,

Count I).  They are also charged with unlawful possession with intent to distribute of 5 grams or

more of cocaine base (or a mixture and substance containing cocaine), in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(B), possession of that substance, in violation of 21 U.S.C. § 844(a) and 18

U.S.C. § 2 (id., Counts II, IV, III).

Given the contentions asserted in Lighten's motion, a review of findings from previous

hearings on specific points is in order.  During the evidentiary hearing held on Lighten's earlier

motion to suppress (Docket No. 53, Oct. 30, 2009, Tr.; see Docket No. 21, motion), Drug

Enforcement Administration ("DEA") agent Joseph Bongiovanni testified that, during the

extraction of Goss during the stop, she "secreted the bag of cocaine, simultaneously during her

extraction" (Docket No. 53, Tr. at 48).  Bongiovanni then stated that, before being handcuffed,

Goss extracted the bag of drugs (id. at 49).  DEA agent Christopher Wisniewski later testified

(again at another session of Lighten's evidentiary hearing) that, as Goss exited the vehicle, "a

large quantity of cocaine in a plastic bag fell out from Amanda Goss' shirt and onto the ground"

(Docket No. 50, Nov. 9, 2009, Tr. at 8).

At the hearing on May 24, 2011, the Government called two witnesses, retired Erie County Sheriff's deputy Patricia Mohn[2] and DEA agent Wisniewski.  Mohn was assigned to the DEA Drug Task Force and stated that she met Goss in the DEA's offices <u>after</u> Goss' arrest (Docket No. 96, May 24, 2011, Tr. at 6).  Mohn searched Goss and asked her if she had any additional drugs on her person  (<u>id.</u>, Tr. at 6-7).  Goss then pulled out a bag with a white rock-like substance believed to be crack cocaine from her bra.  Mohn then patted Goss down and did not find anything else  (<u>id.</u>, Tr. at 7-8).  The Government next called DEA agent Wisniewski to testify again about the stop and arrest of Goss.  Wisniewski testified that, when Goss first stepped out of the car, a bag containing what appeared to be crack cocaine fell to the ground; this was witnessed by a second DEA agent, Connelly (<u>id.</u>, Tr. at 16-17).

*Lighten's Motion to Dismiss*

Lighten now argues that the record herein contains three falsities made by DEA agent Bongiovanni to the Grand Jury that warrant dismissal of the Indictment (Docket No. 114).  First, Bongiovanni testified before the Grand Jury that Lighten obtained drugs from a person known either as "Brashier" or "Cross" (hereinafter called here "Cross").  Bongiovanni then stated that Lighten and Goss arranged to transport the drugs in such a manner that there would be no connection between those drugs and Cross.  But at the suppression hearing, Bongiovanni did not mention Cross and Bongiovanni testified that Lighten denied possessing the drugs.  (Docket No.114, Lighten Atty. Aff. ¶¶ 4-5; <u>see</u> Docket No. 53, Tr. of Oct. 30, 2009, at 29.)

---

[2]Lighten spells her name "Mohen" in his papers, <u>cf.</u> Docket No. 114, Lighten Atty. Affirm. ¶ 9; Docket No. 53, Tr. Oct. 30, 2009, at 49.  In prior Reports, her last name was spelled "Mohn," as she testified to during her examination, <u>see</u> Docket No. 96, Tr. of May 24, 2011, at 5.

The second instance Lighten cites is when Bongiovanni testified before the Grand Jury that a female deputy was present during the arrest and observed the drugs drop from Goss as Goss exited the vehicle.  Bongiovanni later identified the deputy as Mohn.  But Bongiovanni's initial testimony was later contradicted by retired deputy Mohn's testimony that she was not at the scene of the arrest and had first met Goss at the DEA offices.  (Id. ¶¶ 7-11.)

The third alleged falsehood was Bongiovanni testifying before the Grand Jury based upon the lab reports as to the quantity of cocaine seized, stating that 5 grams or more of cocaine was seized.  The report, however, indicates that only 4.3 grams or less of cocaine was seized.  (Id. ¶¶ 12-14, Ex. C.)  The quantity of drugs is important since defendants were charged with possessing and conspiring to distribute 5 or more grams.

Lighten argues that this Court should exercise its supervisory powers and dismiss this Indictment based upon false testimony (Docket No. 115, Lighten Memo. at 2).

The Government argues that there was ample evidence before the Grand Jury to indict the defendants and that they have not shown falsity to the Grand Jury to question the presumption of Grand Jury regularity applicable to Indictments (Docket No. 117, Gov't Response at 2-3).

## DISCUSSION

I.      Goss' Motion of Joinder

Goss moved (Docket No. 116) to join Lighten's motion to dismiss.  That motion should be **granted**.  Hereinafter in this Report, Lighten's motion will be treated as a joint defense motion.

II.    Dismissal of the Indictment

There is a presumption that Grand Jury proceedings are lawful and regular.  Hamlin v.

United States, 418 U.S. 87, 139 n.23 (1974); United States v. Salameh, 152 F.3d 88, 109-10 (2d

Cir. 2004); United States v. Torres, 901 F.2d 205, 232 (2d Cir. 1990) (Docket No. 117, Gov't

Response at 2).  For defendants to prevail, they have to overcome that presumption.  Defendants

do not allege any impropriety in the Grand Jury proceedings save Bongiovanni's testimony on

three points.

Lighten seeks this Court to exercise its supervisory powers to strike this Indictment

because it is the product of false testimony before the Grand Jury (Docket No. 115, Lighten

Memo. at 2).

A.    Cross and Discrepancies in Possession

The first alleged falsehood involves whether Lighten said anything about Cross being his

supplier and whether Lighten admitted to possessing the drugs.  The statements defendants claim

as being inconsistent to the level of falsity are not inconsistent and, if deemed so, these

inconsistencies raise issues of credibility subject to resolution at trial rather than dismissal of the

Indictment.  Bongiovanni's testimony to the Grand Jury was that, when Lighten was questioned,

Lighten stated that he picked up the drugs and "were trying to transport it in a way where

Brashier [Cross], the gentlemen [sic] he met . . ., wouldn't have to touch it.  Therefore, Ms. Goss

was holding the package" (Docket No. 114, Lighten Atty. Aff., Ex. A, Grand Jury Tr., Aug. 7,

2008, at 9).  At the suppression hearing Bongiovanni testified again as to what Lighten said about

where Lighten got the drugs and whether Lighten possessed them.  A review of the transcript

from the October 30, 2009, suppression hearing reveals that Bongiovanni testified that Lighten

and "Basheer Cross" were seen speaking with each other on Sayer Street, in the City of Buffalo, during the surveillance of Lighten's vehicle and then engaged in a drug transaction where Lighten obtained drugs from Cross (Docket No. 53, Tr. at 21-24). Thus, there is no inconsistency with Bongiovanni's Grand Jury testimony. Even if there was a showing of inconsistency, defendants fail to show that the Grand Jury testimony (as opposed to the later suppression hearing testimony) was false to invalidate the Indictment.

       B.      Who Pulled Goss Out of Car

      In the last Report & Recommendation for Goss (Docket No. 104, Report & Rec. of Sept. 20, 2011, at 3), this Court found that Wisniewski and a second agent observed Goss exit the vehicle and drop the contraband from her clothes and that Mohn was not at the scene of the arrest. It appears Bongiovanni may have confused the arrest (and the disclosure and seizure of cocaine from Goss) with the cocaine discovered in DEA headquarters when Goss was questioned by Mohn following her arrest, compressing the two events into one continuous "arrest".

      Again, during the October 30, 2009, hearing, Bongiovanni testified that he observed Goss being extracted from the car when a package dropped from her shirt (Docket No. 53, Oct. 30, 2009, Tr. at 27). She was arrested and agents recovered a white powdery substance later identified as cocaine hydrochloride (id.). He later testified that incident to the arrest at DEA headquarters, Goss was searched by a female deputy (Mohn) when additional drugs were found on Goss (id. at 29-30, 49). As previously noted above, other officers testified that the observed a package fall from Goss when she exited from the vehicle.

This discrepancy whether a female deputy was or was not at the scene of the arrest again goes to Bongiovanni's credibility at trial, in isolation does not seem material, and is not fatal to the Indictment.

      C.      Amount of Cocaine in Lab Report

Lighten argues that the third falsehood is the amount of cocaine found on defendants, according to the lab report.  Apparently reading from the lab report, Bongiovanni testified to the Grand Jury that over 5 grams of cocaine were seized.  He testified there that 28.89 grams of cocaine were initially seized and the 3.4 grams were found to be pure, according to the lab report (Docket No. 114, Lighten Atty. Aff., Ex. A, Grand Jury Tr. at 8).  But the amount of cocaine confirmed by testing was 4.3 grams (id., Ex. C).  Defendants were indicted for conspiring to distribute and possessing 5 grams or more of cocaine.  During oral argument, the Government argues that Bongiovanni read the report and the amount submitted was over 5 grams (28.89 grams) and Bongiovanni testified to the Grand Jury as to the amount submitted.  Conceding that Bongiovanni was inaccurate as to weight, the Government concludes that this inconsistency in the weight does not create a defective flaw in the Indictment since possession of a lesser amount than 5 grams is a lesser included offense of possession charged in this Indictment (Docket No. 117, Gov't Response at 1 n.1).

D.     In Sum

"Dismissal of an indictment because of defects in the Grand Jury proceedings is 'the most drastic remedy, and thus is rarely used,' United States v. Dyman, 739 F.2d 762, 768 (2d Cir. 1984)," United States v. Kasper, No. 10CR318, 2012 U.S. Dist. LEXIS 8679, at *6 (W.D.N.Y. Jan. 25, 2012) (Skretny, Ch.J.).  It may be done when the violation is "one of those 'few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's function," United States v. Mechanik, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment); Bank of Nova Scotia v. United States, 487 U.S. 250 (1988); United States v. Williams, 504 U.S. 36, 46 (1992), including criminal false declarations before the Grand Jury, Williams, supra, 504 U.S. at 46 n.6; 18 U.S.C. § 1623 (see also Docket No. 115, Lighten Memo. at 2).  Lighten points out instances where courts have exercised this supervisory authority, but not where false testimony was given to the Grand Jury; cf. Williams, supra, 504 U.S. 36 (Court declining to exercise supervisory authority, or even to recognize that it applied, where exculpatory evidence was not presented to the Grand Jury); United State v. Leeper, No. 06CR58, 2006 U.S. Dist. LEXIS 32147, at *12-15 (W.D.N.Y. May 22, 2006) (Arcara, Ch.J.) (in exercise of supervisory authority, dismissing Indictment without prejudice where charge contained mistake); United States v. Martinez, No. 08CR69, 2010 U.S. Dist. LEXIS 2, (W.D.N.Y. Jan. 3, 2010) (Skretny, Ch.J.) (rejecting dismissal on prosecutorial misconduct grounds).  In Martinez, Chief Judge Skretny held that to succeed in a motion to dismiss, "the defendant must establish that the errors alleged substantially influenced the Grand Jury's decision to indict, or that there is a 'grave doubt' that the Grand Jury's decision

to indict was free from the substantial influence of the alleged violations," Martinez, supra, 2010 U.S. Dist. LEXIS 2, at *4 (quoting Bank of Nova Scotia, supra, 487 U.S. at 256).

For a criminal false statement to the Grand Jury charge under § 1623, the false statement has to have been knowingly made and material, 18 U.S.C. § 1623(a), that is whether the false testimony is capable of influencing the Grand Jury on the issue before it, see United States v. Gugliaro, 501 F.2d 68, 72 (2d Cir. 1974).

Defendants fail to invalidate the Indictment based upon the three purported points of inconsistencies in Bongiovanni's testimony.  The Grand Jury only determines whether probable cause exists to charge these defendants for these offenses.  It does not serve as a test of the credibility or accuracy of the evidence.  There was sufficient evidence of probable cause to charge these defendants as they were charged in this Indictment.  These discrepancies singly or collectively are not sufficiently material to have mislead the Grand Jury in its investigation of whether an offense had occurred and whether defendants committed it.  Defendants' motion to dismiss the Indictment (Docket No. 114; see Docket No. 116, Goss Joinder Motion) should be **denied**.

CONCLUSION

Based upon the above, it is recommended that defendant Montu Lighten's motion to dismiss the Indictment (Docket No. 114) be **denied** and defendant Amanda Goss' motion to join Lighten's dismissal motion (Docket No. 116) be **granted** and that motion to dismiss the Indictment as to Goss also be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

10

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
March 5, 2012